IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA         )
                                 )
                Plaintiff,       )
                                 )
        Vs.                      ) 09CR 50041-3
                                 ) Judge Frederick J. Kapala
KENNETH TOWNSEND                 )
                                 )
                                 )
                Defendant,       )


DEFENDANT'S OBJECTION TO PRESENTENCE REPORT, MOTION FOR
DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM


Now comes the Defendant, KENNETH TOWNSEND, by his attorney,
WILLIAM O. WALTERS, and presents this sentencing memorandum and
Motion for Downward Departure.

GUIDELINES CALCULATION

Kenneth Townsend disagrees with the calculation contained
within the Presentence Investigation Report that after
acceptance of responsibility he has an adjusted offense level of
40 and a criminal history category of III with an advisory
guideline range of 360 months to life.  Rather Kenneth Townsend
believes that the accurate adjusted advisory guideline range is
offense level 31 with a criminal history category of II 121-151
months in the Bureau of Prisons.

2D1.1 OFFENSE LEVEL

The Prosecution asserts that the offense level for the

offense of conviction is 38 as greater than 30 kilograms of heroin being distributed. Kenneth Townsend disagrees. Kenneth Townsend within his proffer agreement stated that he first came part of this conspiracy in early 2008. He believes that actually it was closer to the date of June 19, 2008 the first time he was mentioned in the discovery materials. (Exhibit 1) Even if we were to accept the date that Probation states it would be a total of 587 days within the conspiracy.

It is the prosecutions burden to prove the quantity of drugs attributable to Kenneth Townsend by a preponderance of the evidence. United States v. Magana, 118 F.3d 1173 (7th Cir. 1997) United States v. Mojica, 984 F.2d 1426 (7th Cir. 1993). The prosecution has not proven that the conspiracy was responsible greater than 30 kilograms of heroin during the time Kenneth Townsend is responsible. Reliance by the Prosecution and Probation on Hollis Daniels statement that the drug conspiracy sold 700 grams of heroin per week is misguided and not supported by the evidence. It is important to note that Probation and the Prosecution create their claimed amount solely upon the unsigned statement of Hollis Daniels. Hollis Daniels refused to sign this statement as being accurate. **Many** more co-defendants have stated when interviewed that the amount of heroin sold during the relevant time period was much less. Following is a summary of what Hollis Daniels co-defendants have stated.

Jamel Gregory in his proffer statement, (Exhibit 2) on August 10, 2009 stated there were 2-3 runners who would sell approximately $500-$1,000 of heroin per day which equates to 105-210 grams per week.  In that same statement he also said that the drug conspiracy would mix about 450-500 baggies of heroin per day which would equate to **315-350 grams per week**. This is less than ½ of what the prosecution and probation are claiming.

Calvin Davis in his testimony before the Grand Jury and testified that the drug conspiracy on average day sold 10 jabs of heroin.  That would total **175 grams per week**. That is ¼ of what the prosecution and probation are claiming. (Exhibit 3)

Emanuel Jones in his signed statement on May 14, 2009 admitted being one of Hollis Daniels three runners and he sold at most 6 jabs a day and he probably sold the most.  This would equate to **315 grams per week**. That is less than ½ of what the prosecution and probation are claiming. (Exhibit 4)

Jonathon Piper in his signed statement on June 11, 2009 stated he was a driver for one of the runners and he and the runner sold $6-700 heroin per day.  Assuming three runners that would equate to **126-147 grams per week**. That is less than ¼ of what the prosecution and probation are claiming. (Exhibit 5)

Josephine Sims in her statement November 9, 2009 related that starting in May 2009 she started working for Hollis Daniels

and they bagged up to 10 jabs of heroin per day. That would equate to **175 grams of heroin per week**. That is ¼ of what the prosecution and probation are claiming. (Exhibit 6)

Andrew Etheridge in his proffer interview stated that the runners sold a total of 6-10 jabs of heroin per day. That would equate to **105-175 grams of heroin per week**. That would be 1/6 to ¼ of what the prosecution and probation are claiming. (Exhibit 7)   Kenneth Block in his statement on September 9, 2009 sold that he would distribute to the runners 4-9 jabs of heroin per day. That would equate to **69-157 grams of heroin per week**. That would be 1/7 to ¼ of what the prosecution and probation are claiming. (Exhibit 8)

Samuel Peeples in his proffer interview on July 1, 2010 state he was selling 4-5 jabs of heroin along with three other runners. This would equate to **140-350 grams per week**. That would be ¼ to ½ of what the prosecution and probation are claiming. (Exhibit 9)

Kenneth Townsend proffer statement states that there were three runners selling 2 jabs per day or **105 grams per week**. That would be 1/7 of what the prosecution and probation are claiming.

Exhibit 10 demonstrates the testimony of the co-defendants as to drug quantity that was sold. If we were to take an average of their testimony it would be approximately 250 grams per week.

The need to approximate drug quantity under the guidelines is not a "license" to calculate drug amounts by "guesswork", United States v. Beeler, 996 F.2d 1541 (3rd Cir. 1993.  The quantity determination must be based on "reliable evidence" and "not speculation",  United States v. Howard 40 F.3d 1194 (7th Cir 1995).

The government and probation's calculation of 700 grams of heroin is based upon the unsupported, unsigned statement of Hollis Daniels that he diluted 100 grams sufficient to have 700 grams per week to sell.  This assumes that the product would be greatly diluted and not saleable.  This sale of heroin lasted for a long period.  Heroin sellers can be replaced easily and if one is selling an inferior product the word would be out and Hollis Daniels and is followers would be out of business.

 The only lab reports that include concentration of purity are from the United States Drug Enforcement Agency.  The DEA lab reports, (Exhibit 11) show varied concentration.

| Net weight | Concetration/Purity | Document# |
|------------|---------------------|-----------|
| 1.5g | 78.6% | 6408-008071 |
| 3.9g | 79.9% | 6408-008073 |
| 0.27g | 18.2% | 6408-008068 |
| 1.7g | 14.8% | 6408-009656 |
| 3.3g | 11.7% | 6408-009656 |
| 1.3g | 8.8% | 6408-009658 |

The wide range of concentration levels from the laboratory

reports indicate that Hollis Daniels was not consistently diluting the raw heroin seven times as the prosecution and Probation contend. Courts of Appeals encourage District Courts to make "conservative estimates, especially when presented with generalized testimony." United States v. Henderson 58 F. 3d 1145, 1152 (7th Cir. 1995). District Courts should "err on the side of caution" where the quantity involved is uncertain. United States v. Sepulveda, 15 F.3d 1161, 1198 (1st Cir. 1993).

Given the contradictory evidence between Hollis Daniels and seven other co-defendants and the discrepancy of the laboratory reports, there is no credible, reliable evidence to support the determination of greater than 30 kilograms of heroin. The evidence upon which a court is entitled to rely when making its sentencing determinations must have "sufficient indicia of reliability to support its probable accuracy." United States v. Beeler, 20 F. 3d 1428 (7th Cir. 1994).

Kenneth Townsend was first in this conspiracy, at the earliest, February 1, 2008. It was more likely June 15, 2008 as was described earlier and show on (Exhibit 1.) The following chart explains what the effects are as to time and quantity regarding the drug amount.

| 2008 | 28 weeks@105 grams | 2,940 grams | | | |
|------|--------------------|-------------|-------|-------|---|
| 2009 | 36.14 weeks@ 105 grams | 3,794 grams | Total 6,734 grams | Offense level 34 | |
| 2008 | 28 weeks @250 grams | 7,000 grams | | | |
| 2009 | 36.14 weeks @250 grams | 9.035 grams | Total 16,035 grams | Offense level 36 | |
| 2008 | 47.71 weeks @105 grams | 5,009 grams | | | |
| 2009 | 36.14 weeks @ 105 grams | 3,794 grams | Total 8,803 grams | Offense level 34 | |
| 2008 | 47.71 weeks @250 grams | 11,907 grams | | | |
| 2009 | 36.14 weeks @250 grams | 9,035 grams | Total 20,942 grams | Offense Level 36 | |

Clearly the offense level determination of the amount of heroin involved should be 34 and at the most 36.

The proffer statements of the co-defendants are the same type of evidence that the prosecution uses to claim that the drug amount sold was 700 grams to reach the greater than 30 kilogram level of 38. There is no logical reason or legal basis

to accept Hollis Daniels statement as true and without question. His statement was never signed to acknowledge it's veracity and is contradicted by the physical evidence as well as statements of his co-defendants. Hence, it cannot be considered proof by a preponderance of the evidenc**e** of the 30 or greater kilogram level when so many who were also within the drug conspiracy state that it was a much lower level.

If you were to solely go by math you would conclude an average of 250 grams per week.

If you accept what Kenneth Townsend asserts the offense level is 34. If you accept the averaging of all, 250 grams per week, you get an offense level of 36. There is no reliable, credible evidence of greater than 30 kilos of heroin for an offense level of 38.

### 2D1.1(b)(1) SPECIFIC OFFENSE CHARACTERISTIC DANGEROUS WEAPON

Probation, on their own, apply this advisory guideline that has the effect of adding two offense levels. They did this application despite the fact that the plea agreement prepared by the Assistant United State's Attorney, and signed by the Assistant United States Attorney and Kenneth Townsend made no mention of application of this advisory guideline. It would be expected that the Assistant United States Attorney had reviewed all available relevant information prior to the drafting of the

plea agreement and came to the same conclusion as Kenneth
Townsend, that there is not a preponderance of evidence to prove
that this advisory guideline should apply.  If the Assistant
United States Attorney, who had prepared many plea agreements
for co-defendants prior to the entry of the change of plea by
Kenneth Townsend, and had considered this same issue for other
co-defendants, had believed there was evidence to support
application of this advisory guideline they would have put it
within Kenneth Townsend's Plea Agreement.  The Assistant United
States Attorney agreed to the factual basis that is within
Kenneth Townsend's plea agreement and there is no mention within
that factual basis about dangerous weapons.  It is the same
factual basis that the Government adopts for purposes of
sentencing as stated in their letter of December 3, 2010 to
Probation (Exhibit 12).  Hence the Government is in disagreement
with the application of this advisory guideline.

In order for all Defendants be consider in equal fashion,
this advisory guideline should not be applied.  The government
in their Sentencing memorandum regarding Co-Defendant Tashayla
Paige(Document #473) (Exhibit 13)states that the weapons held by
Tashayla Paige were for her personal protection and not for a
purpose connected to the instant offense.  This is consistent
with the statement of facts within the plea agreement of Kenneth
Townsend and should be equally applied to Kenneth Townsend.

Kenneth Townsend contends that there is not sufficient credible evidence to support application of this advisory guideline. Probation relies on the post arrest statement of Hollis Daniels September 9, 2009 to justify the application of this advisory guideline. It should be noted that this statement was not signed by Hollis Daniels. Probation in lines 322-329 states that it is **felt** …… . A statement of feeling "felt" is not evidence sufficient to cause application of this advisory guideline. Probation continues in that same section that various "proffer statements" support the proposition that this advisory guideline is applicable. No names are given as the source of these proffer statements. This is a blanket conclusion based upon no listed evidence and is without value. The mere presence of a firearm and a defendant's association with illegal possessors is not sufficient to activate this guideline. <u>United States v. Cochran</u> 14 F.3d 1128 (6th Cir 1994).

Kenneth Townsend believes that there has not been proof by a preponderance of evidence that Kenneth Townsend possessed any firearm or that another participant for whom he is responsible possessed a firearm during acts in furtherance of the charged conspiracy and objects to the application of this advisory guideline and the two offense level enhancement.

### 3B1.1 AGGRAVATING ROLE IN THE OFFENSE

The prosecution asserts that the offense level should be

increased by 3 levels claiming that Kenneth Townsend was a manager or supervisor of a criminal activity that involved five or more persons. Kenneth Townsend objects to this enhancement. We do agree that the criminal activity involved five or more people, but do not agree he was a manager or supervisor. This criminal conspiracy involved 15 defendants as charged in the Indictment. While it is acknowledged that Hollis Daniels was the leader/organizer of the conspiracy, five other individuals, Kenneth Block, Jamel Gregory, Robert Cobb, John Knox and Kenneth Townsend have been attributed with an aggravating role in the offense as a manager/supervisor. This is an extremely large number of management figures.

It would be expected that a manager/supervisor would be expected to get greater percentage of the profits of the conspiracy. Kenneth Townsend received five hundred dollars per week ($500). Given the amount of money that was said to be made by the sale of this contraband five hundred dollars per week is a small percentage of the profits and not indicative of a manager/supervisor.

Robert Cobb stated within his proffer that he and Kenneth Block ran the Hollis Daniels drug conspiracy while Hollis Daniels was in jail.

Kenneth Block within his plea agreement stated he was the primary person responsible for the Daniels drug conspiracy when

Daniels was not available.  (Exhibit 15)

There is no evidence within the discovery materials that Kenneth Townsend ever made any discretionary decisions or carried out any act that was not first approved by Hollis Daniels.  He solely followed what he was told to do.  This is contradictory to the duties of what a manager is expected to perform.   In regard to mixing the heroin, Hollis Daniels taught him, and directed him, how to mix the heroin and to package the product. (Exhibit 16)

Probation within the PSR, lines 169-175, states Kenneth Townsend was responsible for a "caretaker" role as well as Gregory without stating any responsibilities as "caretaker". For Kenneth Townsend there are no listed examples of his responsibilities as caretaker nor are there any examples of Kenneth Townsend exercising those "caretaker" responsibilities. There was no example of Kenneth Townsend managing the runners. No example of Kenneth Townsend recruiting any runners. No example of Kenneth Townsend providing any vehicles to any others. No Example of Kenneth Townsend storing any money.  No examples of Kenneth Townsend determining what days or locations the runners should work.  No examples of Kenneth Townsend making any authoritative decisions.

CRIMINAL HISTORY OVERSTATED

Kenneth Townsend asks for a downward departure because his

criminal history is overstated. Probation within the PSR
contends that he has 5 criminal history points. Kenneth
Townsend believes that he has 4 criminal history points, and of
those 4 criminal history points, 2 are solely for the passage of
time. The 2 points I am alluding to are those attributed in
lines 454-459 for the instant offense while on probation
ss4A1.1(d). The United States Sentencing Commission amended the
guidelines to eliminate ss4A1.1(e) effective Nov. 1, 2010. They
eliminated this guideline stating that recency points add
nothing to the predictive quality of the criminal history score
and fail to reflect meaningful differences in offender
culpability. It is a logical and reasonable progression that the
same logic applies to 4A1.1(d). Criminal History points are
designed to reflect prior criminal convictions and cause a
greater penalty because of this greater criminal conviction
record. It reflects the fact that a person who has already
served a significant period of time incarcerated, a period
exceeding one year and one month is accorded 3 criminal history
points. For a sentence of incarceration greater than 60 days
criminal history points, and for each prior sentence not already
counted 1 criminal history point. The fact that Kenneth
Townsend was on probation at the time of the offense does not
cause any reason for an enhanced penalty. There has been no
studies or statistical determination to justify this section of

this advisory guideline.

Defendant Kenneth Townsend objects to line 439 of the
Presentence report that attributes one criminal history point
for a June 29, 2007 arrest for Illegal Transportation of
Alcohol.  The sentence for that offense was a fine and court
costs.  This offense is similar to careless or reckless driving,
disorderly conduct or disturbing the peace driving without a
license or with a revoked or suspended license as listed in
ss4A1.2(c)(1) that are not to be counted unless there is a term
of probation of more than one year or a term of imprisonment of
at least thirty days and loitering, public intoxication and
vagrancy as listed in ss4A1.2(c)(2) that are never counted as
criminal history.

Kenneth Townsend's criminal history is overstated and
should be reduced to category II.

LEGAL STANDARD TO DETERMINE SENTENCE

The Supreme Court and Congress require the district court
to sentence in accordance with 18 U.S.C. ss3553 (a).  Rita, 137
S.Ct. at 2469 Explaining that district judges are required "to
filter the Guidelines' general advice through 3553(a)'s list of
factors"); Booker, 543 U.S. at 259-60; see also United States v.
Wachowiak, 496 F.3d 744, 748 (7th Cir. 2007)(holding that after
Booker, the Guidelines are advisory, but application of
ss3553(a) is mandatory).  The Supreme Court in Rita held that

14

sentencing judges are required "to impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing" in ss3553 (a). Rita, 127 F.3d at 2463.  This so-called parsimony provision serves "as the guidepost for sentencing decisions post Booker."  United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006) The purposes of sentencing include the need:

> *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> *to create adequate deterrence;
> *to protect the public from future crimes of the defendant; and
> *to provide the defendant with necessary treatment and training.

18 U.S.C. 3553(a) (2); Booker, 543 U.S. at 260.

In Rita, the Supreme Court forbade district courts from according a presumption of reasonableness to the Guidelines. Rita, 127 S.Ct. at 2465 ("The sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.")  The Seventh Circuit has held in United States v. Demaree, 459 F.3d 791, 794 (7th Cir. 2007) that district court judges are not "permitted …to presume that a sentence within the Guideline range is the correct sentence," and that district courts "must sentence based on ss3553 (a) without any thumb on the scale favoring a guideline sentence," United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

District court judges possess broad discretion to sentence below the advisory guideline range. United States v. Gall, 128 S.Ct. 586 (2007). This discretion stands even where the sentence lies significantly outside the Guideline range. Id.; also, e.g. Wachowiak, 496 F.3d at 751 ("We will not substitute our judgment for that of the sentencing court… As with other discretionary decisions, the district court is institutionally better situated to make individualized sentencing judgments than an appellate panel."; United States v. Ngatia, 477 F.3d 496, 501-02 (7th Cir. 2007} In fact, a district court judge' "freedom to impose a reasonable sentence outside the range is unfettered," United States b. Demaree, 459 F.3d 791, 795 (7th Cir. 2007), and the Seventh Circuit will scrutinize a district court's refusal to grant a reduction below the range, United States v. Vaughn, 433 F.3d 917, 924 (7th Cir. 2006).

Additional factors that ss3553 (a) directs sentencing courts to consider include:

> ss3553 (a)(1);The nature and circumstances of the offense and the history and characteristics of the defendant,
> (a)(2)The need for the sentence imposed-
> (a)(2)(A); to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (a)(2)(B); to afford adequate deterrence to criminal conduct,
> (a)(2)(C) to protect the public from further crimes of the defendant; and
> (a)(2)(D) to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment in the most
effective manner
      (a)(3)The kinds of sentences available;
      (a)(4)The kinds of sentences and the sentencing
ranges established;
      (a)(5) Pertinent Sentencing Commission policy
statements;
      (a)(6) The need to avoid unwarranted sentencing
disparities; and
      (a)(7) The need to provide restitution to any
victims of the offense.

## 18 U.S.C. 3553(a)(1) HISTORY AND CHARACTERISTICS OF KENNETH TOWNSEND

Kenneth Townsend's childhood was difficult and without any direction from any father figure. Kenneth Townsend was raised primarily by his mother. She tried to help him but needed to be away from home a great amount of time as she worked two jobs to try to support the family. His father was in and out of the house and has been a heroin addict as long as he can remember. He received no parental guidance from his father. His father is in fact one of the co-defendants in this case. While in grammar school he played football for the school and had a serious knee injury. His brother introduced him to marijuana. Until he was twelve years old he lived on the west side of Chicago, a dangerous violent neighborhood. They moved to Rockford and eventually he became involved in selling drugs. While it was not a good choice, he sold drugs to help his mother to pay the bills and to help to support his own children. On May 23, 2009 his mother was killed by his brother. As a reaction to this he

smoked marijuana daily and drank a ½ pint of cognac or vodka daily to take things off his mind.

Kenneth Townsend has three children ages 3, 4, and 5. He remains in contact with their mother and his children despite his current incarceration. Before his incarceration he would see his children on a daily basis. (PSR 644-650) He suffers from great sorrow because of the recognition of what his penalty must be, a minimum of 10 years and his inability to be present during the formative years of his children and fears than they could fall into the same situation he currently is in.

His uncle Burnell Townsel described Kenneth Townsend as one who was always there to help the family. (Exhibit 17) His aunt Ms. Taylor gives a similar description of Kenneth Townsend as being loveable kind and very dependable, and her children love being around him. (Exhibit 18) These are more accurate descriptions for Kenneth Townsend.

Lack of guidance and family circumstances can act as a mitigating factor. U.S. v. Patzer 556 F. Supp. 2d 612 (N.D. Ill. 2008)

Kenneth Townsend's sister Toccara Byrd described him as a very sweet, compassionate, strong minded, very motivated, and very smart. She explains how in approximately 2000 Kenneth Townsend's family was evicted from their home and had to live in a shelter for six months and he had vowed this would never

happen again. (PSR lines 654-662)  This confirms what Kenneth Townsend told probation during the presentence interview that he began his criminal conduct to help his mother and family financially. (PSR lines 291-295).

After having been incarcerated for 16 months he recognizes that before his mind was cloudy and now after being sober this amount of time his mind is clearer and he thinks better.  A shorter period of incarceration with drug and alcohol treatment would greater meet the goals of justice.

JUST PUNISHMENT THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE 3553(a) (2) (A)

Kenneth Townsend has acknowledged what he has done is wrong.  He has fully cooperated with the prosecution.  He presented himself for a proffer and timely entered a plea of guilty.  The prosecution would have moved pursuant to advisory guideline 5K1.1 for a downward departure based upon this proffer, but Kenneth Townsend had difficulties with his prior attorney and as a consequence current counsel was appointed. Due the necessity of the time for counsel to be fully aware of all evidence, any possible defenses, and completely and fully discuss all of the evidence and applicable laws with Kenneth Townsend the prosecution denied to make a 5K1.1 motion for downward departure.  The fact is that Kenneth Townsend provided his proffer on December 3, 2009  which was early in the

prosecution of all co-defendants.  His proffer was known and gave reason for the co-defendants to enter pleas of guilty, and that is substantial assistance to authorities as described in advisory guideline 5K1.1.  The District Court should take under advisement… the contention that a defendant made efforts to cooperate, even if those efforts did not yield a government motion for downward departure pursuant to U.S.S.G. ss5K1.1, United States v. Fernandez, 443 R.3d 12,33 (2d Cir. 2006). Departures aside, the nature and degree of assistance to the government is of course a relevant sentencing factor.  United States v. Laufle, 433 F.3d 981,987 (7th Cir. 2006).  As a general matter, a district court may consider a defendant's cooperation with the government as a basis for reduced sentence, even if the government has not made a 5K1.1 motion.  United States v. Knox 573 F.3d 4414, 454 (7th Cir. 2009).

Kenneth Townsend's actions in providing the proffer testimony and entering a plea of guilty shows his respect for the law and a logical conclusion that a lessor period of incarceration is necessary to meet the purposes of punishment and a sentence not greater than necessary to meet the goals of justice.

PROTECTION OF THE PUBLIC 3553(a)(2)(C)

Kenneth Townsend has never been sentenced to any great period of incarceration.  The longest incarceration sentence has been 17 days. He has been in custody since September 8, 2009 for this offense, a period of 17 months.  This more than a 300% greater period of time than he ever served before.  A prison sentence means more to a person who has never before been incarcerated.  United States v. Baker 445 F3d. 987, 992 (7th Cir. 2006)  "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend." U.S. v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005)  Longer sentences do not deter crime, and incarceration does not reduce drug crime.  The Sentencing Project, Incarceration and Crime: A Complex Relationship at 6-7 (2005), available at http://www.sentencingproject.org/pfs/incareration-crime.pdf. His aunt Neatter Taylor (Exhibit 19) describes Kenneth Townsend as a person who learns from his mistakes.  This is a confirmation that this current incarceration has had a strong effect on Kenneth Townsend and he is less likely to reoffend.

Kenneth Townsend has never been charged or convicted of any crime of violence.  Non-violent offenders are less likely to re—offend.

Kenneth Townsend after arrest cooperated with the prosecution. He presented himself for an interview by the Assistant United States Attorney. The fact of his cooperation and his voluntary plea of guilty demonstrates his recognition of his mistakes and desire to proceed in society in a more positive way. These actions by him cause this Honorable Court to believe that he is less likely to re-offend in the future and reflects positively on his history and character.

The advisory drug guidelines are driven primarily with an emphasis on drug type and quantities. The advisory guidelines aggregate drug amounts and types while statutes do not. As noted in United States v. Cabrerra, 567 F.2D 271, (D. Mass 2008), sentencing driven by drug amounts and type have "leveraging effect" that is of questionable relevance in determining the Section 3553(a) factors. Second, retail distribution networks, which cause aggregation of thousands of individual sales, result in punishment at the high end of the guidelines when the reason Congress created greater penalties for larger amounts was to capture and punish more severely persons who were in the wholesale distribution of drugs and who sold kilograms and hundreds of kilograms of drugs at a time. Although the scholarly literature, the empirical data, and a 1996 Sentencing Commission Task Force recommended that the Guidelines heavy reliance on quantity be reevaluated, the

Commission has never reexamined the drug quantity tables.  <u>U.S.</u>
<u>v. Cabrerra</u> at 276 n.5.


  Kenneth Townsend is in criminal history category II or III and
drug offenders in criminal history categories II-VI have the
lowest rate of recidivism of any federal offenders. USSC,
<u>Measuring Rcidivism: The Criminal History Computation of the</u>
<u>Federal Sentencing Guidelines</u>, at 13 & Exh. 12, available at
http://www.ussc.gov/publicat/Recidivism_General.pdf

     These are legitimate facts that this Honorable Court can
take into consideration.  Kenneth Townsend has a low risk of
recidivism and these facts provide a reason to impose a lower
sentence.

 <u>3553(A) (5) RELEVANT POLICY 3553(A) (5) RELEVANT POLICY</u>
<u>STATEMENTS ISSUED BY THE SENTENCING COMMISSION</u>

        It makes no sense, legal or economical to sentence
Kenneth Townsend to a lengthy period of incarceration.  Lengthy
periods of incarceration do not provide greater deterrence.
Given the factors that direct toward a lower sentence as
described above consideration must also be given to the cost of
incarceration.  The current annual cost of incarceration is
$25,894.50.  The annual cost of supervision by a probation
officer is $3,743.23 (PSR lines 560-562).  It would be better to
sentence Kenneth Townsend to a lower sentence with provision for

drug and mental health counseling than to sentence him to a long prison sentence.

This Honorable Court can certainly impose a sentence that is below the sentencing guideline range. The Guidelines are just advice and a judge's "freedom to impose a reasonable sentence outside the range is unfettered." United States v. Demaree 459 F. 3d 791 (7th Cir. 2006)

The standard of review at the District Court level for determining the appropriate sentence is governed by ss3553 (a) where it states the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing.

This Honorable Court in making its decision as to an appropriate sentence after considering the advisory guidelines and reviewing the factors stated in Section 3553(a) including considerations of the history and characteristics of Kenneth Townsend, Just Punishment, Protection of the Public and Relevant Policy Statements should sentence Kenneth Townsend to a sentence to period in the Bureau of Prisons of 120 months. He has already served 17 months incarcerated. A sentence of 120 months would be an amount sufficient but not greater than

necessary to meet the goals of sentencing, any amount greater would not truly reflect accurate scrutiny of all the factors presented and not reflect a fair and just sentence.

Respectfully submitted,

By: /s/WILLIAM O. WALTERS
William O. Walters

William O. Walters
Attorney at Law
118 S. Elm St.
Mt. Prospect, IL  60056
(847) 394-8848

CERTIFICATE OF SERVICE


     The undersigned, William O. Walters, hereby certifies that
the following document

     DEFENDANT'S MOTION FOR OBJECTION TO PRESENTENCE REPORT,
MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM


Was served on February 7, 2011, in accordance with Fed. R. Crim.
P.49, Fed. R. Civ. P.5, LR 5.5, and the General Order on
Electronic Case Filing (ECF) pursuant to the district court's
system as to ECF filers.




                    /s/William O. Walters